ENTERED

SEP 15 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

JONATHAN G. REYNOLDS,

     Plaintiff,

v.                                Civil Action No.  3:04-0769

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.

## MEMORANDUM OPINION AND ORDER

     Plaintiff Jonathan G. Reynolds appeals the Social Security Commissioner's (hereinafter "Commissioner") final decision denying his applications for disability insurance benefits (hereinafter "DIB") and for supplemental security income (hereinafter "SSI") based on disability, brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I

     The plaintiff protectively filed his applications for DIB and SSI on August 29, 2002, alleging disability commencing July 17, 2002, as a consequence of a partial foot amputation. Both applications were denied initially and again upon reconsideration.  At his request, administrative hearings were held on October 15, 2003 and February 18, 2004.  On March 26, 2004, an administrative law judge (hereinafter "ALJ") found that the plaintiff was not disabled, and his decision became the Commissioner's final decision when the Appeals Council denied

plaintiff's request for review.  Thereafter, the plaintiff filed this action seeking review of the

Commissioner's decision.

At the time of the ALJ's decision, the plaintiff was twenty-five years of age, had obtained

a high school education and had work experience as a laborer.  In his decision, the ALJ

determined from the objective medical evidence that the plaintiff suffered from the following

"severe" impairments[1] as defined by the social security regulations: "left foot amputation, left leg

fracture, borderline IQ, and mood disorders."  (R. 27.)  He also determined that the plaintiff did

not have an impairment or impairments which in combination satisfied or equaled any of the

impairments listed in Appendix 1, Subpart P, Regulation No. 4.  He further determined that the

plaintiff had the following residual functional capacity (hereinafter "RFC"):

> The claimant has the residual functional capacity to lift and/or carry 20
> pounds occasionally and 10 pounds frequently.  He should not perform significant
> standing or walking.  He can only occasionally climb and should never balance.
> He should avoid work at unprotected heights and around dangerous, moving
> machinery.  He should avoid exposure to cold temperatures.  He should not walk
> sideways or backwards.  He should avoid work on slanted or uneven terrain.  He
> is limited to simple, routine work activities, reads at the 5th grade level and
> performs math at the 5th grade level.  The claimant has fair (limited but
> satisfactory) ability to: relate to co-workers; deal with the public; use judgment;
> deal with work stresses; understand, remember and carry out complex job
> instructions; behave in an emotionally stable manner; and relate predictably in
> social situations.  Further, his judgment is moderately deficient and his recent
> memory is severely deficient.

(R. 27.)  On the basis of this determination and plaintiff's age, education, and employment

background, and relying on Rule 202.20 of the medical-vocational guidelines[2] and the testimony

---

[1] A medically determinable impairment or combination of impairments is severe if it
significantly limits an individual's physical or mental ability to do basic work activity.  20 C.F.R.
§§ 404.1521(a) and 416.921(a).

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 2.

of a vocational expert (hereinafter "VE"), the ALJ found him not disabled.

Additional facts will be introduced as they relate to plaintiff's arguments for relief.

## II

Under the Social Security Act (hereinafter "Act"), the Court is required to uphold the Commissioner's decision if the decision is supported by substantial evidence and adheres to proper legal standards. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or his ALJ, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), and "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner or his ALJ]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issues before the Court are whether the ALJ's decision is supported by substantial evidence that plaintiff is not disabled within the meaning of the Act and whether the decision is based on the correct application of the relevant law. *Coffman*, 829 F.2d at 517.

According to the Act, an individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C.A. §§ 423(d)(1)(A), 1382c(a)(3)(A) (West Supp. 2000).  The Commissioner has developed a five-step procedure for making this determination.  The first step requires consideration of whether the claimant is engaged in substantial gainful activity.  If so, the claimant is found not disabled.  If not, the second step requires a finding of whether there is a "severe" impairment.  If not, the claimant is found not disabled.  If so, the third step calls for an analysis of whether the impairment(s) meets or equals one contained in the listing of impairments.[3]  If so, the claimant is found disabled without further analysis.  If not, the process continues to the fourth step where it is determined whether the claimant's impairment(s) prevents the performance of his or her past relevant work.  If not, the claimant is found not disabled.  If so, the burden of production shifts to the Commissioner for the final step.[4]  In the fifth step, the Commissioner must demonstrate that the claimant can do other work.  If the Commissioner satisfies this burden, benefits are denied.  Otherwise, the claimant is found disabled, and benefits are awarded.  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, both parties agree that the plaintiff has not engaged in any substantial gainful activity since his alleged onset date; he has severe impairments; he does not have an impairment or combination of impairments that satisfies a listing in Appendix 1, Subpart P, Regulations No. 4; and, he is unable perform his past relevant work.  They disagree, however, on whether his impairments prevent him from performing any work.  Hence, the plaintiff has appealed to this Court and seeks to have the Commissioner's decision reversed.

---

[3]20 C.F.R. Pt. 404, Subpt. P, App. 1.

[4]*Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

## III

It appears that plaintiff has submitted three grounds in support of his motion for judgment on the pleadings. He alleges that the ALJ improperly rejected the opinion of his treating physician, that the ALJ failed to properly evaluate his pain and credibility and that the ALJ failed to properly evaluate the combined impact of his impairments on his ability to perform any work. The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial evidence and adheres to the law. The Court will address plaintiff's grounds for judgment on the pleadings seriatim.

## A

Plaintiff's first argument for relief is that the ALJ failed to properly consider the opinion of his treating physician, David P. Herr, M.O. On September 23, 2002, Dr. Herr opined that plaintiff's condition as the result of injuries sustained in August of 2001 was not compatible with any type of employment. Dr. Herr recommended vocational rehabilitation.

The disability decision is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Moreover, an ALJ's determination as to the weight to be assigned to a medical opinion cannot be disturbed without some indication that the ALJ has "dredged up specious inconsistencies" or has failed to provide a good reason for the weight afforded a particular opinion. *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992), *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). In *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), the Fourth Circuit affirmed that a treating physician's opinion on the issue of disability is not controlling. In *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996), the court stated that the regulations give a treating doctor's opinion controlling weight with respect to the nature and severity of the

impairment if the opinion is well supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

The court further stated: "[B]y negative implication, if a physician's opinion is not supported by

clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." *Id.*

When a treating doctor's opinion is not given controlling weight, however, the following

factors should be used to determine the opinion's weight. First, the more evidence the physician

presents to support his opinion, particularly medical signs and laboratory findings, the more

weight is given to the opinion. Well-reasoned explanations are also given more weight,[5] and the

more consistent a treating doctor's opinion is with the record as a whole the more weight

afforded to his opinion.[6]  Finally, a specialist's opinion will be given more weight than that from

a nonspecialist.[7]

Contrary to plaintiff's argument, Dr. Herr's opinion does not suggest that the plaintiff is

disabled from all work. Instead, Dr. Herr's opinion and his progress notes indicate that the

plaintiff should be retrained for sedentary work. In consideration of Dr. Herr's opinion and

progress notes as well as other evidence in the record, the ALJ determined that plaintiff's foot

amputation was a severe impairment, and accordingly, he restricted the plaintiff from

employment that required significant standing and walking as well as climbing, balancing, and

being exposed to unprotected heights and dangerous, moving machinery. Thus, the ALJ did not

---

[5]20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

[6]20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).

[7]20 C.F.R.§§ 404.1527(d)(5), 416.927(d)(5).

ignore or improperly weigh Dr. Herr's opinion.  In light of the fact that Dr. Herr's opinion is consistent with the ALJ's RFC finding, the Court holds that substantial evidence supports the ALJ's decision regarding Dr. Herr's opinion.

**B**

Next, the plaintiff argues that substantial evidence does not support the ALJ's findings concerning his pain and credibility.

The Fourth Circuit has developed the following standard for determining whether an individual's pain is disabling.  "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996).  Thus, in order for a "disability to be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established." *Id.* at 592.  Furthermore, "allegations of pain and other subjective symptoms, without more, are insufficient." *Id.*  "Pain is not disabling *per se,* and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Id.* (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984); *see also* 20 C.F.R. §§ 404.1528(a), 416.928(a) (stating that a claimant's "statements . . . alone . . . are not enough to establish that there is a physical or mental impairment").

Turning to the law on credibility, it is the ALJ's responsibility, not the courts, to weigh and resolve conflicts in the evidence.  Courts are not allowed to substitute their judgment for that of the ALJ, provided that substantial evidence supports the decision. *Hays*, 907 F.2d at 1456. *See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (recognizing that the ALJ's

assessment of claimant's pain level is entitled to great weight); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (*per curiam*) (stating that the ALJ has a duty of explanation when making determinations about the credibility of a claimant's testimony).

Starting with plaintiff's allegation of physical pain, the record contains the following medical evidence: On January 17, 2002, the plaintiff was discharged from physical therapy, having met all of his goals. On June 6, 2002, Dr. Herr reported that plaintiff's gait pattern was approaching normal. On July 19, 2002, the plaintiff reported to Dr. Herr that he did not need pain medication when he was not standing for long periods of time.

On October 2, 2002, Fulvio Franyutti, M.D. completed a physical RFC assessment for the plaintiff. After reviewing the medical records, Dr. Franyutti opined that the plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday and perform unlimited pushing or pulling. He further determined that the plaintiff could perform all postural maneuvers frequently except for climbing ladders, ropes and scaffolds.

In July of 2003, the plaintiff underwent a physical functional capacity assessment by Robert N. Lontz, MSPT, Cert. MDT, a licensed physical therapist. Mr. Lontz determined that the plaintiff was capable of very heavy work, lifting up to 115 pounds infrequently and 58 pounds frequently and walking a quarter of a mile at a brisk pace and a consistent gait pattern.

On October 16, 2003, the plaintiff sought treatment from Adam M. Franks, M.D. Upon examination, Dr. Franks found that the plaintiff had full range of motion of the left lower extremity, that he had minimal movement at the ankle and that there was no crepitus or instability of the joints. Dr. Franks diagnosed left leg and foot pain and prescribed ibuprofen,

Elavil and Paxil. On October 31, 2003, the plaintiff returned to Dr. Franks seeking a prescription of Lortab. The plaintiff reported that the ibuprofen had not helped with his pain and that he had been taking his mother's Lortab 10 three times a day. Dr. Franks refused to prescribed such a strong medication, and the plaintiff "stormed out of the room uttering profanities." (R. 285.) Dr. Franks noted that plaintiff was not limping when he left the office.

Finally, the Court notes that plaintiff reported on his daily activities questionnaire, dated November 28, 2002, that he was able to care for his personal needs; vacuum; do lawn care; carry in groceries; take out the trash; drive; watch television for three hours a day; listen to the radio for an hour a day; listen to records and tapes for an hour a day; go hunting and fishing, play sports and go to movies once every two or three months; and, visit his girlfriend three to four times a week.

It is clear from the medical evidence that plaintiff's leg and foot injury cause him pain. Thus, the plaintiff has satisfied the first part of the *Craig* analysis. The second part of the *Craig* analysis, however, requires a determination of whether the medical condition causes the degree of limitation, as alleged by the plaintiff. The medical evidence indicates that plaintiff suffers significantly less pain when he is not on his feet for long periods of time. Moreover, his daily activities indicate that he is able to participate in a number of activities despite the pain he does experience. Finally, it appears that the plaintiff has become dependent on narcotic pain relievers. All of this evidence is inconsistent with plaintiff testimony that his pain is a ten when he stands and a seven when he is sitting. As the medical evidence does not corroborate plaintiff's claims, in the amount and degree, as alleged by him, the Court holds that substantial evidence supports the ALJ's finding that he is not disabled due to pain. The Court further holds that because the

medical evidence is inconsistent with plaintiff's testimony substantial evidence supports the
ALJ's finding concerning his credibility.  *See Hays*, 907 F.2d at 1456.  Finally, the Court notes
that the ALJ did not ignore plaintiff's allegations of pain because the ALJ did restrict him to
employment that does not require significant standing or walking as well as climbing, balancing
and being exposed to unprotected heights and dangerous, moving machinery.

Turning to plaintiff's mental impairments, the record contains the following medical
evidence: On July 22, 2003, the plaintiff underwent mental evaluation for depression at
University Psychiatric Associates at the request of the West Virginia Division of Rehabilitation.
William Downs, MSW conducted the evaluation.  Upon mental status examination, Mr. Downs
found the following:

> The patient's affect was generally irritable and depressed.  He exhibited no humor
> and was very matter-of-fact during the interview.  There was also an air of
> defensiveness exhibited.  He was congruent and relevant in his speech.  Memory
> was intact times four.  No evidence of a thought disorder or auditory or visual
> hallucinations.  Insight was limited.

(R. 268.)  Based upon his examination and interview with the plaintiff, Mr. Downs diagnosed
mood disorder due to general medical condition (i.e., persistent pain related to injury sustained in
2001/prominent features are irritability and depression).  (R. 268.)  Mr. Downs recommended
medication and made a follow up appointment for him the following month.  The Court notes
that there is no indication in the record that the plaintiff kept the appointment.

On November 18, 2003, the plaintiff underwent a psychological evaluation by David E.
Frederick, Ph. D. at the request of the State Agency.  Upon examination, Dr. Frederick found the
following:

**OBJECTIVE FINDINGS**:  Mr. Reynolds was an open, friendly and irritated

man who cooperated fully throughout the evaluation. His thought process, thought content and speech were WNL. His mood was irritable and mildly depressed. His affect was slightly flat.

His intellectual functioning was tested to be in the borderline range. Her judgment was assessed to be moderately deficient, and his concentration to be WNL.

His immediate, recent and remote memory functioning were assessed to be WNL, severely, deficient, and WNL, respectively.

(R. 273.) Dr. Frederick diagnosed mood disorder due to partial foot amputation and leg damage,

with depressive features. (R. 273.) Dr. Frederick also reported the following concerning

plaintiff's daily activities, social functioning, persistence, pace and financial capabilities:

**DAILY ACTIVITIES**: WNL
Mr. Reynolds said he get up at various times, depending upon when he was able to fall sleep. He said he sits around the house, plays video games, and helps his mother (cleaning the house, taking trash out). He mows the grass using a riding mower. He can cook and do laundry. In the evenings, he sits around (bored), plays video games and watches television.

**SOCIAL FUNCTIONING – SELF REPORTED**: Mr. Reynolds goes to his brother-in-law's restaurant to sit around and talk with the regulars (the coffee drinkers), and occasionally to eat. He said he feels loved by his parents.

**PERSISTENCE**: WNL - Claimant stayed on task well during the tests and was focused and appropriately responsive during the interview.

**PACE**: WNL - as indicated by pace of speech and movement during the interview and th testing, resp.

**CAPABILITY**: The claimant is competent to manage own finances.

(R. 273.)

Finally, it appears that the plaintiff sought treatment at Prestera Center for Mental Health

Services on March 22, 2004. The Prestera Center's psychologist diagnosed major depression,

single episode and referred him to a Dr. Robertson for medication. The Court notes that the

plaintiff reported doing yard work and working on cars as his leisure activities. It appears from the record that plaintiff was prescribed some medication on April 7, 2004. The Court notes that the plaintiff reported that he was taking ibuprofen.

It is clear from the medical evidence that plaintiff has problems with depression and irritability. It is equally clear, however, that these problems have not rendered him disabled. The evidence indicates that he is able to do a number of activities such as household chores, cooking laundry as well as drive a car and visit friends and family. Moreover, it appears that his memory and concentration allow him to watch television and play video games. Furthermore, he has not socially isolated himself as evident by his routine of playing video games with friends and visiting with locals at a coffee shop. Given all of this evidence, the Court holds that the ALJ's finding that he is able to do simple, routine work activities with a fair ability to relate to co-workers; deal with the public; use judgment; deal with work stresses; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; and, relate predictably in social situations is supported by substantial evidence. The Court further holds that because this evidence is inconsistent with plaintiff's testimony substantial evidence supports the ALJ's finding concerning his credibility on this issue.

## C

Next, the plaintiff argues that the ALJ failed to properly consider the combined impact of his impairments on his ability to perform any work.

The Fourth Circuit has held that "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether any such impairments if considered separately' would be sufficiently severe." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.

1989) (quoting 42 U.S.C.A. § 432(d)(2)(c) (1982 and Supp. 1988)).

After reviewing the ALJ's decision and the testimony at the administrative hearing, the Court rejects plaintiff's contention. The ALJ's RFC finding as well as his hypothetical questions to the vocational expert set out all of the plaintiff's impairments that were supported by the objective medical evidence. The ALJ's RFC finding is extensive, and it takes into account plaintiff's left leg and foot pain as well as mood disorder and borderline IQ. The vocational expert, using those limits identified by the ALJ, testified that there were a significant number of jobs in the economy which plaintiff could perform. Thus, both in his findings and in soliciting the views of the vocational expert, the ALJ considered the combined effect of the plaintiff's impairments as established by the evidence. Therefore, the Court holds that there is substantial evidence in the record to support the ALJ's finding concerning the combined effect of plaintiff's impairments on his ability to perform work.

## IV

On the basis of the foregoing, it is **ORDERED** that the plaintiff's motion for judgment on the pleadings be **DENIED**, that the Commissioner's motion for judgment on the pleadings be granted and the Commissioner's decision be **AFFIRMED**. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

ENTER:


ROBERT J. STAKER
Senior United States District Judge